1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   CENTER FOR ENVIRONMENTAL
    HEALTH, et al.,                            Case No.  15-cv-01690-JSC

8                 Plaintiffs,

9          v.                                  **ORDER DENYING DEFENDANTS'
                                               MOTION TO DISMISS**
10  TOM VILSACK, et al.,                       Re: Dkt. No. 24

11                Defendants.

12

13          Plaintiffs, three environmental nonprofits, contend that Defendants, the United States

14  Department of Agriculture and other governmental actors and agencies, violated the

15  Administrative Procedures Act ("APA") 5 U.S.C. § 553(b), (c) by issuing a guidance document

16  under the National Organic Program without providing public notice and comment.  Plaintiffs

17  contend that this document amended existing national organic food regulations such that certified

18  organic producers can now use compost materials treated with synthetic pesticides.  Now pending

19  before the Court is Defendants' motion to dismiss the complaint for lack of subject matter

20  jurisdiction and failure to state a claim. (Dkt. No. 24.)  Having considered the parties'

21  submissions, and having had the benefit of oral argument on September 10, 2015, the Court

22  DENIES the motion to dismiss.[1]

23                              **BACKGROUND**

24          The Organic Foods Production Act, 7 U.S.C. § 6501 et seq., ("the Organic Foods Act")

25  established national standards for organically produced agricultural products.  Pursuant to 7

26  U.S.C. § 6503, the Secretary of Agriculture "shall establish an organic certification program for

27

28  [1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
    636(c).  (Dkt. Nos. 17 & 18.)

United States District Court
Northern District of California

producers and handlers of agricultural products that have been produced using organic methods."

This program is known as the National Organic Program ("the Organic Program"), 7 C.F.R. § 205

et seq., and responsibility for its administration is delegated to the Agricultural Marketing Service.

7 C.F.R. §§ 2.22(a)(1)(viii)(SS); 2.79(a)(8)(liii); 205.2.

The Organic Foods Act established standards which an agricultural product must satisfy to

be sold or labeled as organic.  *See* 7 U.S.C. § 6504.  Pursuant to these standards, the agricultural

product must:

> (1) have been produced and handled without the use of synthetic chemicals, except
> as otherwise provided in this chapter;
> (2) except as otherwise provided in this chapter and excluding livestock, not be
> produced on land to which any prohibited substances, including synthetic
> chemicals, have been applied during the 3 years immediately preceding the harvest
> of the agricultural products; and
> (3) be produced and handled in compliance with an organic plan agreed to by the
> producer and handler of such product and the certifying agent.

*Id*.  The Organic Foods Act also directed the establishment of a "National List of approved and

prohibited substances" for use in organic production.  7 U.S.C. § 6517(a); 7 C.F.R. § 205.203(e).

Only substances on the National List may be used in organic production "[p]rovided [t]hat, use of

such substances do not contribute to contamination of crops, soil, or water."  7 C.F.R. § 205.601.

(Complaint ¶ 28.)  The Organic Program regulations specifically prohibit use of "[a]ny fertilizer or

composted plant and animal material that contains a synthetic substance not included on the

National List of synthetic substances allowed for use in organic crop production."  7 C.F.R. §

205.203(e)(1).  The only "compost feedstocks" allowed under the Organic Program are

"[n]ewspapers or other recycled paper, without glossy or colored inks."  7 C.F.R. § 205.601(c).

An "agricultural product shall not be sold or labeled as organically produced" if it is

determined to contain a residue that is "(A) the result of intentional application of a prohibited

substance; or (B) present at levels that are greater than unavoidable residual environmental

contamination."  7 U.S.C. § 6511(c)(2).  The National Organic Standards Board "shall advise the

Secretary concerning the testing of organically produced agricultural products for residues caused

by unavoidable residual environmental contamination."  7 U.S.C. § 6518(k)(5).  Unavoidable

residual environmental contamination (UREC) is defined as "[b]ackground levels of naturally

occurring or synthetic chemicals that are present in the soil or present in organically produced

2

United States District Court
Northern District of California

1   agricultural products that are below established tolerances."  7 C.F.R. § 205.2.

2   In 2009, inspectors from the California Department of Food and Agriculture (CDFA)

3   found detectable levels of bifenthrin—a residential insecticide—in three compost products listed

4   for use in organic agriculture.  (Complaint ¶ 43.)  The CDFA banned all three products from use in

5   organic production.  (*Id*.)  The United States Department of Agriculture (USDA) thereafter issued

6   a document with control number NOP 5016 which is titled "Guidance Allowance of Green Waste

7   in Organic Production Systems."  (Dkt. No. 1-1 (Complaint at Ex. A).) The "guidance provides

8   clarification on the allowance of green waste and green waste compost in organic productions

9   systems under the National Organic Program (NOP) regulations."  (*Id*. at 2.[2])  It recites the

10   requirement of Section 205.203(e) that "[t]he producer must not use: (1) Any fertilizer or

11   composted plant and animal material that contains a synthetic substance not included on the

12   National List of synthetic substances allowed for use in organic crop production."  (*Id*. at 3.)  Then

13   notes that

> However, the [Organic Program] regulations were established with
> recognition that background levels of synthetic pesticides may be
> present in the environment and, therefore, may be present in organic
> production systems. This is referred to as unavoidable residual
> environmental contamination (UREC) in the regulations.
> Furthermore, the [Organic Program] standards are process based and
> do not mandate zero tolerance for synthetic pesticide residues in
> inputs, such as compost. Compost that is produced from the
> approved feedstocks, listed above, is acceptable for use in organic
> production, provided that any residual pesticide levels do not
> contribute to the contamination of crops, soil or water.
>
> Green waste and green waste compost that is produced from
> approved feedstocks, such as, non-organic crop residues or lawn
> clippings may contain pesticide residues. Provided that the green
> waste and green waste compost (i) is not subject to any direct
> application or use of prohibited substances (i.e. synthetic pesticides)
> during the composting process, and (ii) that any residual pesticide
> levels do not contribute to the contamination of crops, soil or water,
> the compost is acceptable for use in organic production.

24   (*Id*.)  Plaintiffs contend that this "guidance" "changed the legal status of bifenthrin and other

25   pesticides that are prohibited for use in organic production but are now being allowed in green

26   waste used in organic production."  (Complaint ¶ 54.)

27   _____

28   [2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
ECF-generated page numbers at the top of the documents.

Plaintiffs challenge the issuance of NOP 5016 without first providing a notice and comment period as required by the APA's rulemaking provisions.    Plaintiff the Center for Environmental Health ("CEH"), a nonprofit public interest organization "committed to environmental justice, promotion a safe and sustainable food supply, supporting communities in their quest for a safer environment, and fostering corporate accountability," brings this action on behalf of itself and its members.  (Complaint ¶¶ 7-8.)  Plaintiff Center for Food Safety ("CFS") is a nonprofit membership organization whose mission it is to "address and ameliorate the adverse impacts of industrial agriculture and food production systems on public health, animal welfare, and the environment, including the impacts of pesticides" (*Id*. at ¶¶ 9-10.)  CFS identifies as an "organic standards watchdog" that "closely monitors and engages with the National Organic Program and National Organic Standards Board." (*Id*. at ¶ 13.)  Finally, Plaintiff Beyond Pesticides is a nonprofit organization that "promotes safe air, water, land, and food, and works to protect public health and the environment by encouraging a transition away from the use of toxic pesticides. " (*Id*. at ¶ 16.)  Beyond Pesticides' members are located throughout the country and include "organic consumers, farmers, certifiers, retailers, and processors who aim to expand the organic program and maintain its integrity." (*Id*. at ¶ 18.)

Plaintiffs filed this action in April 2015 alleging that Defendants the USDA, the Agricultural Marketing Service, Tom Vilsack, the Secretary of the USDA, Anne Alonzo the Administrator of the Agricultural Marketing Service, and Miles McEvoy, the Deputy Administrator for the National Organic Program, violated the APA's notice and comment opportunity prior to rule-making and seek to enjoin and vacate operation of NOP 5016 until after the proper procedures are followed.  (Complaint ¶¶ 65-76, B, C.)  Defendants thereafter filed the now pending motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No. 24.)

## LEGAL STANDARD

### A.    Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit.  *See* Fed. R. Civ. P. 12(b)(1).  "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to

determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976 (9th Cir. 2012) (internal quotation marks and citation omitted). "A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution [and] standing is a 'core component' of that requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "To satisfy Article III's case or controversy requirement, [a plaintiff] needs to show that he has suffered an injury in fact, that the injury is traceable to the challenged action of [the defendant], and that the injury can be redressed by a favorable decision." *Fortyune v. Am. Multi–Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). In ruling on a motion to dismiss for want of standing, the court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009).

### B.     Rule 12(b)(6)

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "[D]ismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation marks and citations omitted); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), under which a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting

United States District Court
Northern District of California

1    *Twombly*, 550 U.S. at 555.)  "[C]onclusory allegations of law and unwarranted inferences are

2    insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir.

3    2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint

4    or counterclaim may not simply recite the elements of a cause of action, but must contain

5    sufficient allegations of underlying facts to give fair notice and to enable the opposing party to

6    defend itself effectively").  The court must be able to "draw the reasonable inference that the

7    defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663.  "Determining whether a

8    complaint states a plausible claim for relief ... [is] a context-specific task that requires the

9    reviewing court to draw on its judicial experience and common sense."  *Id.* at 663–64.

                                        **DISCUSSION**

10         Defendants' motion to dismiss is two-fold.  First, Defendants contend that Plaintiffs lack

11   standing because they have not alleged a cognizable injury. Alternatively, Defendants argue that

12   Plaintiffs fail to state a claim upon which relief can be granted because NOP 5016 was exempt

13   from the APA's formal notice and comment rulemaking procedures.  Because the question of

14   whether Plaintiffs have adequately alleged a claim is part of the standing inquiry, the Court first

15   addresses Defendants' motion to dismiss for failure to state a claim.

16         **A.  Plaintiffs State a Claim for Violation of the APA**

17         The parties do not dispute that the USDA did not give public notice or an opportunity to

18   comment prior to adoption of NOP 5016. The dispute here is whether the USDA was required to

19   do so.  Plaintiffs contend that because NOP 5016 altered a practice that was previously prohibited

20   by the Organic Foods Act and its implementing regulations—use of compost that contains

21   pesticides—it is a legislative rule which triggered the notice and comment requirements of the

22   APA.

23         Under the APA, 5 U.S.C. § 500 et seq., an agency must follow specific procedures before

24   issuing a rule. "These procedures include: (1) publication of notice of the proposed rule in the

25   Federal Register, 5 U.S.C. § 553(b); (2) a period for interested individuals to comment on the

26   proposed rule, id. § 553(c); and (3) publication of the adopted rule not less than thirty days before

27

28

United States District Court
Northern District of California

6

United States District Court
Northern District of California

its effective date, *id.* § 553(d)."[3] *Mora–Meraz v. Thomas*, 601 F.3d 933, 939 (9th Cir. 2010).   The notice and comment requirement is not applicable to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A). "Generally, agencies issue interpretive rules to clarify or explain existing law or regulations so as to advise the public of the agency's construction of the rules it administers." *Gunderson v. Hood*, 268 F.3d 1149, 1154 (9th Cir. 2001).  General statements of policy, on the other hand, are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993) (internal citation and quotation marks omitted).

National Organic Program regulations specifically prohibit use of "[a]ny fertilizer or composted plant and animal material that contains a synthetic substance not included on the National List of synthetic substances allowed for use in organic crop production." 7 C.F.R. § 205.203(e)(1).  The only "compost feedstocks" allowed under the Organic Program are "[n]ewspapers or other recycled paper, without glossy or colored inks." 7 C.F.R. § 205.601(c). Thus, NOP 5016's statement that "green waste and green waste compost" may contain pesticide residues "[p]rovided that the green waste and green waste compost (i) is not subject to any direct application or use of prohibited substances (i.e. synthetic pesticides) during the composting process, and (ii) that any residual pesticide levels do not contribute to the contamination of crops,

---

[3] Section 553, the APA's notice-and-comment rulemaking provision, provides in full that:
    (b) General notice of proposed rule making shall be published in the Federal Register.... The notice shall include—
    (1) a statement of the time, place, and nature of public rule making proceedings;
    (2) reference to the legal authority under which the rule is proposed; and
    (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved. Except when notice or hearing is required by statute, this subsection does not apply—
    (A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice....
    (c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose....
    (d) The required publication or service of a substantive rule shall be made not less than 30 days before its effective date, except ...
    (2) interpretative rules and statements of policy....
5 U.S.C. § 553(b)–(d).

United States District Court
Northern District of California

soil or water" represents a change to Section 205.203(e).  Defendants contend that this change does not trigger the APA's notice and comment provisions because it is either an interpretive rule or a general statement of policy.  As discussed below, the Court concludes that it cannot say at the pleading stage that Plaintiffs' legal theories are foreclosed as a matter of law.

### 1.  General Statements of Policy

"The critical factor to determine whether a directive announcing a new policy constitutes a rule or a general statement of policy is the extent to which the challenged [directive] leaves the agency, or its implementing official, free to exercise discretion to follow, or not to follow, the [announced] policy in an individual case." *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th Cir. 1987) (internal quotation marks and citation omitted).  "To the extent that the directive merely provides guidance to agency officials in exercising their discretionary powers while preserving their flexibility and their opportunity to make 'individualized determination[s],' it constitutes a general statement of policy." *Id.*  "In contrast, to the extent that the directive 'narrowly limits administrative discretion' or establishes a 'binding norm' that 'so fills out the statutory scheme that upon application one need only determine whether a given case is within the rule's criterion,' it effectively replaces agency discretion with a new 'binding rule of substantive law.'  In these cases, notice-and-comment rulemaking proceedings are required, as they would be for any other substantive rule, and they will represent the only opportunity for parties to challenge the policy determinations upon which the new rule is based." *Id.*

Thus, to qualify for the "statement of policy" exception to notice and comment two requirements must be met: (1) the policy operates only prospectively, and (2) the policy does "not establish a binding norm, or be finally determinative of the issues or rights to which [it] address[es]" and instead leaves officials "free to consider the individual facts in the various cases that arise." *Id.*  Drawing all inferences in Plaintiffs' favor, at a minimum the second requirement is not satisfied as a matter of law.

The policy can plausibly be read as establishing a binding norm.  Before the adoption of NOP 5016 an organic producer could not use any compost that contains a synthetic substance not included on the approved list (for example, bifenthrin).  Under NOP 5016, in contrast, an organic

United States District Court
Northern District of California

1   producer is allowed to use a compost containing bifenthrin (or similar synthetic substances)

2   provided the bifenthrin is not added during the composting process or otherwise does not

3   contribute to the contamination of soil, crops, soil or water.  NOP 5016 does not leave the

4   certifying agent with any discretion as to the compost containing bifenthrin: provided the

5   bifenthrin was not added during the composting process and does not otherwise contaminate the

6   environment, the resulting product can be labeled organic (provided other requirements are met).

7   In sum, prior to NOP 5016 the presence of bifenthrin categorically barred the organic label;

8   following the adoption of NOP 5016 the presence of bifenthrin does not bar the organic label

9   provided two additional requirements are met.

10          Defendants nonetheless contend that NOP 5016 has no binding effect because it is a part of

11   the "National Organic Program Handbook: Guidance and Instructions for Accredited Certifying

12   Agents and Certified Operations" which contains a disclaimer suggesting that the documents

13   contained therein are not legally binding.  Defendants ask the Court to take judicial notice of the

14   Program Handbook because it is a matter of public record, citing this Court's decision in *Lacayo*

15   *v. Donahoe*, No. 14-CV-04077, 2015 WL 3866070, at *3 (N.D. Cal. June 22, 2015).  However,

16   Defendants fail to note that in *Lacayo* the Court also held that the matters that were judicially

17   noticeable were limited to the "existence of the administrative proceedings and the agency's

18   findings and [the Court] does not credit the truth of any fact recounted or matter asserted in the

19   documents." *Id*.  Thus, while the Court may take judicial notice of the existence of this Program

20   Handbook, it may not take judicial notice of the substance of the Program Handbook for the truth

21   of any matter asserted within the Program Handbook, including the disclaimer as to the legal

22   effect of the "guidance" contained therein.  *See Gerritsen v. Warner Bros. Entertainment Inc.*,

23   2015 WL 4069617 *11 (C.D. Cal. Jan. 30, 2015).

24          In any event, the Court is not required to accept the agency's interpretation of the legal

25   effect of the guidance.  *See Hemp Indus. Ass'n v. Drug Enforcement Admin*., 333 F.3d 1082, 1088

26   (9th Cir. 2003) ("fact that an agency claims that its rule does not bind tribunals outside the agency,

27   however, does not end the inquiry into whether the rule is legislative.  Regardless of the agency's

28   claims, if there is no legislative basis for enforcement action on third parties without the rule, then

9

the rule necessarily creates new rights and imposes new obligations."). A rule "may still be legislative if it is inconsistent with a prior rule having the force of law." *Id*. Defendants have not shown that as a matter of law NOP 5016 is merely a guidance policy for which no notice and comment is required.

### 2. Interpretive Rules

Nor have Defendants shown that NOP 5016 is exempt as an interpretive rule. A rule is interpretive if it is "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Mem'l Hosp*., 514 U.S. 87, 99 (1995) (internal citation and quotation marks omitted). "In general terms, interpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule. Legislative rules, on the other hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Hemp Industries*, 333 F.3d at 1087 (9th Cir. 2003) (internal citations omitted). "If a rule is inconsistent with or amends an existing legislative rule, then it cannot be interpretive. This is because a rule that is inconsistent with a rule promulgated subject to notice and comment would impose new rights or obligations and would require compliance with the § 553 procedures." *Mora-Meraz*, 601 F.3d at 939-40 (internal quotation marks and citation omitted). Further, legislative rules generally have the "force of law," while interpretive rules do not. *Erringer v. Thompson*, 371 F.3d 625, 630 (9th Cir. 2004). The Ninth Circuit has thus set forth "a three-part test for determining whether a rule has the 'force of law': (1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general legislative authority; or (3) when the rule effectively amends a prior legislative rule." *Id*.

Defendants' motion to dismiss must be denied because at a minimum the complaint plausibly alleges that NOP 5016 "effectively amends a prior legislative rule." The legislative rule, 7 C.F.R. § 205.203(e)(1), prohibits the use of any compost that contains a synthetic substance not on the National List of approved synthetic substances in organic production. No other exceptions are permitted. If the synthetic substance is not on the National List of approved synthetic substances an organic producer cannot use compost containing that substance. Period. NOP 5016

United States District Court
Northern District of California

amends section 205.203(e)(1) to provide an additional exception:  an organic producer can use a synthetic substance even if it is not on the National List provided the synthetic substance is not applied during or used in the composting process and does not contaminate the environment. Thus, the Complaint adequately alleges that NOP 5016 amended an existing legislative rule.

Defendants' first response, that Plaintiffs have failed to allege any specific instances of actual enforcement of 7 C.F.R. § 205.203(e)(1) to prohibit use of green waste compost that contains pesticide residue, is a non-starter.  On Defendants' motion to dismiss all reasonable inferences must be drawn in Plaintiffs' favor.  That the regulation has been enforced as written is one such reasonable inference.  That the CDFA banned composts containing detectable levels of bifenthrin (Complaint ¶ 43) further supports that inference.  Defendants point to nothing in the Complaint that eliminates that inference.

Defendants' next argument fares no better.  They insist that NOP 5016 is interpretative as a matter of law because it explains the meaning of the word "contains" in Section 205.203(e)(1); that is, a "producer must not use: (1) Any fertilizer or composted plant and animal material that *contains* a synthetic substance not included on the National List of synthetic substances allowed for use in organic crop production."  Thus, according to Defendants, NOP 5016 clarifies that a green waste compost only *contains* a non-approved synthetic substance if either the substance was directly applied during the composting process or if it contributes to the contamination of crops, soil, or water.

For purposes of this motion to dismiss, the Court cannot hold as a matter of law that Defendants' interpretation of NOP 5016 is the only plausible construction.  There is nothing in NOP 5016 itself which suggests that it is merely defining the word "contains" as used in Section 205.203(e)(1).  Plaintiffs' construction of "contains" as meaning "includes" is perfectly plausible and thus must be accepted. If accepted, then it is equally plausible that NOP 5016 amended an existing legislative rule.

*   *   *

Defendants have not shown as a matter of law that NOP 5016 is either an interpretive rule or a general statement of policy, and Plaintiffs have adequately alleged that it is a legislative rule

11

subject to the notice and comment requirements of the APA.  Defendants' motion to dismiss for failure to state a claim is therefore denied.

### B.  Standing

The Court thus turns to Defendants' motion to dismiss for lack of standing.  To establish standing, "a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180–81 (2000) (internal quotation marks and citation omitted).  "The injury may be minimal," *Preminger v. Peake*, 552 F.3d 757, 763 (9th Cir. 2008), so long as it "amounts to more than an 'identifiable trifle.'"  *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 932 (9th Cir. 2008).  Defendants contend that Plaintiffs have not alleged a cognizable injury either to themselves or their members.

"To satisfy the injury in fact requirement, a plaintiff asserting a procedural injury must show that the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing."  *Citizens for Better Forestry v. U.S. Dep't of Agric*., 341 F.3d 961, 969 (9th Cir. 2003) (internal quotation marks and citation omitted). "Thus, to show a cognizable injury in fact, [Plaintiffs] must allege (and on summary judgment adduce sufficient facts to show) that (1) the USDA violated certain procedural rules; (2) these rules protect [Plaintiffs'] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests."  *Id*. at 969-70.

Plaintiffs contend that because NOP 5016 was not subject to formal notice and comment rulemaking, "the USDA failed to ensure that its regulation is consistent with OFPA and the standards set forth for approving the use of synthetic substances" and as a result "organic consumers are being misled, and can no longer rely on the organic label to ensure the food they purchase is produced without synthetic pesticides in agricultural inputs."  (Complaint ¶¶ 61-62.) Plaintiffs' members are both organic consumers and farmers who "pay a premium for organic foods in large part to avoid synthetic pesticides" and "believe in the integrity of the organic

1    standards" and "fully comply with it in their production practices," respectively  (*Id*. at ¶¶ 62-62.)

2           Plaintiffs have also submitted declarations supporting their allegations that their members

3    face environmental, health, and economic injury as a result of NOP 5016.[4]  Terry Shistar, a

4    member of Plaintiff Beyond Pesticides, has health concerns which cause her to buy only organic

5    food, as a result of NOP 5016 and her concern that it may result in contamination of food labeled

6    as organic with pesticides, she now must expend additional time and energy to ensure that the food

7    she purchases is in fact organic.  (Dkt. No. 29 at ¶¶ 1, 8, 13; *see also* Dkt. No. 32 (Dunham Decl.)

8    at ¶¶ 2, 8; Dkt. No. 33 (Porter Decl.) at ¶¶ 2, 7, 9, 12; Dkt. No. 34 (Wallick Decl.) at ¶¶ 2, 7, 9-11.)

9    Likewise, Lisa Bunin, a member of Plaintiff Center for Food Safety, purchases organic food for

10   her family at a premium because the food "is not grown with the use of synthetic toxic pesticides,

11   genetically engineered organisms or crops, or sewage sludge."  (Dkt. No. 31 at ¶¶ 1, 13.)  Farmer

12   Elise Higley, also a member of Plaintiff Center for Food Safety, attests that she is harmed

13   economically by NOP 5016 because as an organic farmer she wants to ensure that the compost she

14   is using is free of synthetic chemicals and NOP 5016 did not establish a testing protocol which

15   would reflect whether the compost that is labeled as organic is in fact free of all synthetic

16   chemicals, and it is not economically feasible to produce her own compost.  (Dkt. No. 30 at ¶¶ 12,

17   13.) These allegations are sufficient at this stage in the proceedings to establish standing.

18         **1.  Procedural Violation**

19         Plaintiffs allege that Defendants violated the APA's rulemaking notice and comment

20   procedures.  Defendants counter that no such requirement applies here as NOP 5016 is not a

21   legislative rule subject to the APA.  For the reasons discussed above, Plaintiffs have adequately

22   alleged a procedural violation.

23

24   _____

25   [4] Although Defendants do not object to these declarations, the Court notes that it may properly
     consider them in the context of this 12(b)(1) motion to dismiss for lack of subject matter
26   jurisdiction.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In
     resolving a [Rule 12(b)(1) ] factual attack on jurisdiction, the district court may review evidence
27   beyond the complaint without converting the motion to dismiss into a motion for summary
     judgment."); *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) ("[t]he district court
28   obviously does not abuse its discretion by looking to this extra-pleading material in deciding the
     issue [of subject matter jurisdiction], even if it becomes necessary to resolve factual disputes.").

United States District Court
Northern District of California

2.   **Concrete Interests**

Defendants contend that to allege a concrete injury Plaintiffs must establish as a matter of law that NOP 5016 causes environmental harm.  But there is no such requirement.  *See*, *e.g.*, *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 971 (9th Cir. 2003) ("Citizens need not assert that any specific injury will occur in any specific national forest that their members visit."); *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1355 (9th Cir. 1994) ("The asserted injury is that environmental consequences might be overlooked as a result of deficiencies in the government's analysis under environmental statutes.")  Indeed, to hold that an environmental "plaintiff's standing depends on 'proof' that the challenged federal project will have particular environmental effects, [] would in essence be requiring that the plaintiff conduct the same environmental investigation that he seeks in his suit to compel the agency to undertake." *City of Davis v. Coleman*, 521 F.2d 661, 670–71 (9th Cir.1975).

The cases cited by Defendants do not suggest otherwise.  In *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 822 (9th Cir. 2002), the plaintiff challenged a Ninth Circuit rule prohibiting the citation of unpublished opinions.  The court held that the plaintiff lacked standing because he "failed to allege any action by the Ninth Circuit that has immediately and personally subjected him to sanctions or has adversely affected one or more of [his] clients in a Ninth Circuit litigation."  Similarly, in *Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n*, 457 F.3d 941, 953 (9th Cir. 2006), the court concluded that the organizational plaintiffs had failed to establish how the health of their members would be affected by the regulation because they had not alleged "with any specificity what geographic areas are most likely to be affected, other than to assert that the regulations impact highways nationwide. Nor have they alleged that they will be exposed to increases in radiation or that they will curtail their use of public highways as a result of the regulation."[5]

_____

[5] The other cases cited by Defendants are similarly unavailing as Plaintiffs neither allege standing on their own behalf (as opposed to in their representational capacity), nor have they failed to tie their alleged injuries to Defendants' acts.  *See*, *e.g.*, *Ctr. for Sci. in Pub. Interest v. Bayer Corp.*, No. C 09-05379 JSW, 2010 WL 1223232, at *4 (N.D. Cal. Mar. 25, 2010) (holding that the organization lacked standing to sue on its own behalf); *Eliahu v. Israel*, No. 14-CV-01636-BLF, 2015 WL 981517, at *8 (N.D. Cal. Mar. 3, 2015) (concluding that plaintiff failed to establish

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        Here, in contrast, Plaintiffs have offered evidence that their members are committed to consuming only organic produce (and by organic, they mean produce grown with compost that does not contain synthetic material) and whereas before they could rely on organic certification, in light of NOP 5016 they cannot discern whether the organic products they purchase are in fact organic or may contain residue of previously banned insecticides.  (Dkt. No. 29 at ¶¶ 8, 13; Dkt. No. 33 at ¶¶ 7-9, 12; Dkt. No. 34 at ¶¶ 7, 9-11.)  And the Plaintiff farmers must now incur additional costs either through attempting to source organic compost that does not have any pesticide residue, by testing the compost they are already using, or making their own compost.  (Dkt. No. 30 ¶¶ 12-13; Dkt. No. 32 at ¶ 8.)  Plaintiffs thus have alleged more than a general "interest in the problem" found insufficient in *Schmier*.  279 F.3d at 823.  They have alleged that the decision undermines the labeling of a product as organic such that they will now have to undertake additional concrete steps to ensure that the products they consume do not contain synthetic materials; the same is true for the farmers who will have to undertake additional steps to ensure their compost is pesticide free.

        These harms are just as concrete as the infringement on aesthetic satisfaction found sufficient to establish standing in other environmental contexts.  *See, e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009) (holding that if the harm alleged "in fact affects the recreational or even the mere aesthetic interests of the plaintiff, that will suffice" for standing purposes); *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 860 (9th Cir. 2005) (holding that an increased risk of an oil spill as a result of the challenged action was sufficient to establish an injury in fact where the plaintiff environmental nonprofit members enjoyed studying the ecological area, observing wildlife, and using the area for  recreation); *Ecological Rights Found. v. Pac. Lumber Co*., 230 F.3d 1141, 1149 (9th Cir. 2000) (an individual can establish an injury in fact by showing "a connection to the area of concern sufficient to make credible the connection that the person's life will be less enjoyable—that he or she really has or will suffer in his or her degree of aesthetic or recreational satisfaction—if the area in question remains or

standing when he failed to allege any injuries fairly traceable to defendant).

1    becomes environmentally degraded."); *Natural Res. Def. Council v. Sw. Marine, Inc*., 236 F.3d

2    985, 994 (9th Cir. 2000) (holding that plaintiffs had established injury in fact where they testified

3    that their "use has been curtailed because of their concerns about pollution, contaminated fish, and

4    the like").  Defendants have not pointed to anything which suggests that a different standard

5    applies to establish standing in a case challenging USDA's alleged failure to comply with

6    rulemaking provisions of the APA.  Plaintiffs have alleged a concrete injury.

7           **3.   Reasonable Probability of Harm**

8           Environmental plaintiffs "seeking to enforce a procedural requirement the disregard of

9    which could impair a separate concrete interest of theirs," can establish standing "without meeting

10   all the normal standards for redressability and immediacy."  *Hall v. Norton*, 266 F.3d 969, 975

11   (9th Cir. 2001).  Rather, they "need only establish the reasonable probability of the challenged

12   action's threat to their concrete interest." *Citizens for Better Forestry*, 341 F.3d at 972 (internal

13   citation and quotation marks omitted).  As discussed above, Plaintiffs have done so through their

14   allegations that NOP 5016 undermines the organic label and poses a risk that synthetic chemicals

15   may enter the organic food chain, which causes them to reevaluate and alter their organic food

16   purchasing and farming practices.  *Citizens for Better Forestry*, 341 F.3d at 975 (concluding that

17   the reasonable probability of injury standard was satisfied where environmental plaintiffs

18   "challenge not only site-specific plans, but also higher-level, programmatic rules that impose or

19   remove requirements on site-specific plans" because such programmatic plans have an indirect

20   environmental impact); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir.

21   2011) (concluding that the allegation that farmers must "test their organic seed crops to ensure that

22   they are 'GE-free'" and take preventative measures such as relocating their fields or creating

23   buffer zones" was sufficient to establish a reasonable probability of harm).

24          In sum, Plaintiffs have adequately alleged a cognizable injury in fact.   Because there is no

25   dispute that Plaintiffs have met the other two prongs of the standing inquiry—causation and

26   redressibility—Plaintiffs have adequately alleged standing at the pleading stage.  *See Lujan*, 504

27   U.S. at 561 (noting also that, "[a]t the general pleading stage, general factual allegations of injury

28   resulting from the defendant's conduct may suffice ....").

United States District Court
Northern District of California

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is DENIED.  (Dkt. No. 24.) Defendants shall file their answer within 14 days.  The parties shall appear for an initial case management conference on Thursday, October 29, 2015 at 1:30 p.m.

**IT IS SO ORDERED.**

Dated: September 29, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

17